**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| **IN RE: PANERA DATA SECURITY LITIGATION**<br><br>This Document Relates To: All Cases | Master File No. 4:24-cv-00847 |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL AND TO DIRECT NOTICE OF PROPOSED SETTLEMENT TO THE SETTLEMENT CLASS <u>AND MEMORANDUM OF LAW IN SUPPORT</u>**

Plaintiffs Samantha Baldwin, Matthew Baldwin, Thomas Jones, Messiah Jordan Weddle, Gracelyn Donovan, Sydney Hollis, Robyn Campbell, Amanda Pharr, Forrest Cooley and Taslima Aktar ("Plaintiffs") submit the following Unopposed Motion for Preliminary Approval of Class Action Settlement. Notably, Panera, LLC ("Panera" or "Defendant") does not oppose certification of the Settlement Class[1] for purposes of effectuating the Settlement submitted herewith for preliminary approval.[2]

## I.     INTRODUCTION AND RELEVANT BACKGROUND

Defendant Panera, LLC ("Panera" or "Defendant") is an American chain of bakery-café restaurants. On March 23, 2024, Panera discovered a security incident involving unauthorized access to its computer network, including systems holding the personal information of Plaintiffs' and Settlement Class Members', including their full names and Social Security numbers (the "Incident"). Plaintiffs received formal notice of the Incident from Defendant through *Notice of Data Breach* letters mailed on or around June 13, 2024 and commenced multiple class action lawsuits alleging Defendant failed to sufficiently protect their Private Information, which were then consolidated by the Court on October 7, 2024. Rather than committing to protracted litigation, counsel for the parties began to exchange information and discuss resolving litigation and, following mediation with well-respected mediator Jill R. Sperber, the parties reached an agreement in principle to settle all claims on a class-wide basis. After spending the following weeks finalizing the Settlement Agreement, it was executed by the parties on April 25, 2025.

The Settlement follows months of good-faith, arms' length negotiations and provides that Defendant will pay $2,500,000 into a non-reversionary Settlement Fund for the benefit of Plaintiffs and Settlement Class Members. The Settlement Class Members will receive individual notice of the

---

[1] Capitalized terms herein have the same meaning as those set forth in the Settlement Agreement (referred to herein as the "Settlement Agreement," "Settlement," or "S.A."), attached as Exhibit A to the Declaration of M. Anderson Berry and Ryan D. Maxey in Support of Plaintiffs' Unopposed Motion for Preliminary Approval and to Direct Notice of Proposed Settlement to the Class (the "Joint Decl."). To the extent there is any conflict between the statements herein and the terms of the Settlement Agreement, the Settlement Agreement shall control.

[2] Defendant does not oppose this Motion. Defendant does not take a position on the amount of a service award or attorneys' fees and costs. While Defendant denies any wrongdoing and further denies that Plaintiffs and the Settlement Class have suffered injury or damages, Defendant does not take a position on the proposed settlement benefits.

Settlement by U.S. mail (and, where possible, e-mail). Every Settlement Class Member can make a claim for any and/or all of the following claim categories: (1) reimbursement of documented out-of-pocket losses incurred as a result of the Incident, up to $500; (2) reimbursement for extraordinary losses, including losses from identity theft or fraud, up to $6,500; and (3) a Residual Cash Payment of up to $250. S.A. ¶¶ 2.2-2.5, 2.8. California residents are additionally entitled to a California Statutory Payment of up to $100. *Id.*, ¶ 2.6. Notice and settlement administration costs, as well as litigation expenses, attorneys' fees, and Class Representative Service Awards as awarded by the Court, will be paid out of the Settlement Fund. *Id.*, ¶ 2.1. Plaintiffs and Proposed Class Counsel strongly endorse the Settlement as an excellent result for the Settlement Class and respectfully submit that the Court should grant preliminary approval and direct that Notice be sent to the Settlement Class.

## II.    THE PROPOSED SETTLEMENT TERMS

### A.    Proposed Settlement Class

The proposed Settlement provides substantial relief for the Settlement Class, which is defined as "all individuals to whom Panera sent notice of the Incident." S.A. ¶ 1.27. The Settlement Class contains approximately 147,321 individuals. *Id.*

### B.    Settlement Benefits

The Settlement negotiated on behalf of the Class provides a $2,500,000 non-reversionary Settlement Fund, from which Settlement Class Members may make a claim for the following benefits.

#### 1.    Monetary Relief

Settlement Class Members may submit a claim for any or all of the following benefits, as applicable: reimbursement for documented "Ordinary" Out-of-Pocket Losses up to $500 per individual (S.A., ¶¶ 2.2.1-2.2.2); and reimbursement for "Extraordinary" Losses up to $6,500 per individual (*id.*, ¶ 2.3). Settlement Class Members with valid, documented Extraordinary Losses may also submit a claim for up to 10 hours of time spent remedying issues related to the Incident at a rate of $25 per hour. *Id.*, ¶ 2.3.4.

If the aggregate amount of approved Claims for Ordinary Out-of-Pocket Losses and approved Claims for Extraordinary Losses and Attested Time exceeds the remaining amount of the Settlement

Fund after payment for notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, approved Claims for Ordinary Out-of-Pocket Losses and approved Claims for Extraordinary Losses and Attested Time will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.*, ¶ 2.5.

Settlement Class Members who resided in California at the time of the Incident may also elect to receive a statutory cash payment of up to $100 on a claims-made basis. *Id.*, ¶ 2.6. If the aggregate amount of approved Claims for a California Statutory Payment exceeds the remaining amount of the Settlement Fund after payment for approved Claims for Ordinary Out-of-Pocket Losses, approved Claims for Extraordinary Losses and Attested Time, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, approved Claims for a California Statutory Payment will be decreased *pro rata* to consume the remaining amount of the Settlement Fund. *Id.*, ¶ 2.7.

In addition to, or in the alternative to, making Claims for Ordinary Out-of-Pocket Losses, Claims for Extraordinary Losses and Attested Time, and/or Claims for a California Statutory Payment, Settlement Class Members may elect to receive a Residual Cash Payment consisting of the lower of (1) a *pro rata* share of the funds remaining in the Settlement Fund after payment of approved Claims for Ordinary Out-of-Pocket Losses, approved Claims for Extraordinary Losses and Attested Time, approved Claims for a California Statutory Payment, notice and administration costs, service award payments approved by the Court, and attorneys' fees and expenses awarded by the Court, or (2) $250, on a claims-made basis. S.A., ¶ 2.8.

If any funds remain in the Settlement Fund after payment of Claims for Ordinary Out-of-Pocket Losses, Claims for Extraordinary Losses, Attested Time, California Statutory Payments, notice and administration costs, service award payments approved by the Court, attorneys' fees and expenses awarded by the Court, and payment of Claims for Residual Cash Payments, such funds will be disbursed to a *cy pres* recipient to be agreed upon by the parties and approved by the Court or, if they cannot agree, selected by the Court. S.A.., ¶ 2.9.

**2.      Business Practice Commitments**

For a period of 12 months following the execution of this Settlement Agreement, Panera also commits to implementing or maintaining certain data-security enhancements. Due to their confidential and sensitive nature, those enhancements are not being publicly disclosed herein but have been shared with Proposed Class Counsel, who agree to maintain the confidentiality of that information. *Id.*, ¶ 2.11.

**C.      Class Notice and Settlement Administration**

Proposed Class Counsel selected, and request that the Court approve, Kroll Settlement Administration LLC, ("Kroll" or the "Claims Administrator") as Claims Administrator. Joint Decl. ¶ 25; S.A. ¶ 1.5. The Claims Administrator will be responsible for providing notice to Settlement Class Members, providing notice to appropriate federal and state officials pursuant to 28 U.S.C. § 1715, maintaining a Settlement Website with all pertinent documents and deadlines, communicating with Settlement Class Members, reviewing and making determinations regarding claims, and disbursing settlement payments.

The Notice Program will be paid for from the Settlement Fund and has been designed to provide the best Notice practicable, aiming to reach the greatest number of Settlement Class members possible. Joint Decl. ¶ 24. Within 14 days of an order directing class notice, Panera will provide to the Claims Administrator a class list that includes Settlement Class Members' full names and last known addresses as reflected in Panera's records. S.A. ¶ 3.2. On or before the Class Notice Date, the Claims Administrator shall mail (and, where possible, email) the Short Form Notice, with an attached "tear off" claim form with prepaid postage for those who wish to make claims that do not require documentation, *e.g.*, Claims for a Residual Cash Payment, a California Statutory Payment, and/or Attested Time. *Id.*, ¶ 3.2.1; *see also id.,* Exh. B (Short Form Notice). For any Short Form Notices that are returned undeliverable, the Claims Administrator shall use reasonable efforts to identify updated mailing addresses and resend the Short Form Notice to the extent updated addresses are identified. *Id.* Additionally, the Claims Administrator will also establish a dedicated Settlement Website and shall maintain and update the website throughout the Claims Period, through which Settlement Class

4

Members can file a claim electronically and obtain copies of the Short Form Notice, Long Form Notice, Settlement Agreement and key case filings. *Id.*, ¶ 3.2.3. To further assist the Settlement Class Members, the Claims Administrator shall also establish and maintain a toll-free help line for Settlement Class Members to call with settlement-related inquiries. *Id.*, ¶ 3.2.4.

The Notice documents, including the Short Form Notice and Long Form Notice, are based on models approved by courts in this District and in data breach settlements across the country. They are clear, concise, and directly apprise Settlement Class Members of all the information they need to know regarding how to make a claim, opt out, or object to the Settlement. Joint Decl. ¶ 24, 26. The timing of the Notice Program will give Settlement Class Members adequate time to determine if they would like to submit a claim, opt out of, or object to the Settlement.

**D.    Opt-Out and Objection Procedures**

**1.    Opt-Outs**

Any Settlement Class Member who wishes to exclude themselves from the Settlement must submit a written request for exclusion (to a designated Post Office box that will be established by the Claims Administrator) via U.S. mail postmarked no later than the Opt-Out Deadline, or submit the same online through the claims portal, no later than the Opt-Out Deadline. S.A. ¶ 4.1. To be effective, the notice must clearly manifest an individual's intent to be excluded from the Settlement Class. *Id.* In the event that there have been more Opt-Outs than listed in a separate letter agreement (to be shared with the Court under seal, if requested), Panera may, by notifying Proposed Class Counsel in writing within fourteen (14) days of receiving the Opt-Out List from the Claims Administrator, void this Settlement Agreement, in which case it shall be obligated to pay all settlement costs and expenses related to notice and administration that were already incurred. *Id.*, ¶ 4.4.

**2.    Objections**

Settlement Class Members wishing to object to the Settlement must submit a written notice of his or her objection to the Court on or before the Objection Deadline, electronically or by mail. *Id.*, ¶ 5.1. The objection must include: (i) the name or caption of the Litigation; (ii) the objector's full name, address, telephone number, and e-mail address (if any); (iii) information identifying the objector

as a Settlement Class Member, including proof that the objector is a member of the Settlement Class; (iv) a written statement of all grounds for the objection, accompanied by any legal support for the objection the objector believes applicable; (v) the identity of all counsel representing the objector; (vi) a statement whether the objector and/or his or her counsel will appear at the Final Fairness Hearing; (vii) a statement identifying all class action settlements objected to by the objector in the previous 5 years; and (viii) the objector's signature and the signature of the objector's duly authorized attorney or other duly authorized representative, if any. *Id.* Any Settlement Class Member who fails to object to the Settlement will be deemed to have waived any such objection but may, at the Court's discretion, still address the Court concerning the Settlement. *Id.*, ¶ 5.2.

## E.   **Release Provisions**

Upon the Effective Date, each Settlement Class Member, including Plaintiffs, shall be deemed to have, and by operation of the Judgment shall have, completely, fully, finally, irrevocably, and forever released, relinquished, and discharged Panera, the Related Entities and the Released Persons from all Released Claims. *Id.*, ¶ 6.1. Further, upon the Effective Date, and to the fullest extent permitted by law, each Settlement Class Member, including Plaintiffs, shall, either directly, indirectly, representatively, on their own behalf or on behalf of any class or other person or entity, as a member of or on behalf of the general public or in any capacity, be permanently barred and enjoined from commencing, prosecuting, or participating in any recovery in any action, regulatory action, arbitration, or court or other proceeding in this or any other forum (other than participation in the settlement as provided herein) in which any Released Claim is asserted.  *Id.*; *see also Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996) (a settlement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action.) (quoting *TBK Partners, Ltd. v. Western Union Corp.*, 675 F.2d 456, 460 (CA2 1982)).

## III.   **LEGAL STANDARD**

Federal Rule of Civil Procedure 23(e) requires court review and approval of any proposed class action settlement. Federal courts strongly favor and encourage settlements, particularly in class actions where the inherent costs, delays, and risks of continued litigation might otherwise overwhelm any

potential benefit the class could hope to obtain. *See Cohn v. Nelson,* 375 F. Supp. 2d 844, 852 (E.D. Mo. 2005) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.") (internal citations and quotations omitted). Courts, including those in this Circuit, endorse a three-step procedure for approval of class action settlements: (1) preliminary approval of the proposed settlement, (2) dissemination of court approved notice to the class with the opportunity for putative class members to opt out or object to the settlement, and (3) a final fairness hearing at which class members may be heard regarding the settlement and at which evidence may be heard regarding the fairness, adequacy, and reasonableness of the settlement. Manual for Complex Litigation (Fourth) (2004) § 21.63.

Plaintiffs seek certification of a Settlement Class consisting of: "all individuals to whom Panera sent notice of the Incident." S.A. ¶ 1.27. The Settlement Class includes approximately 147,321 individuals and satisfies Rule 23, as set forth below.

## IV.    THE SETTLEMENT SATISFIES THE RULE 23(E) FACTORS

In preliminarily evaluating the fairness of the settlement, courts consider the factors articulated in Rule 23(e)(2), which include whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.[3]

### A.    Plaintiffs and Their Counsel Have Adequately Represented the Settlement Class

Plaintiffs and their counsel have vigorously and adequately represented the class since the start of the litigation. Plaintiffs have actively participated in the litigation, providing allegations for the Complaint, gathering information for informal discovery, and working with Class Counsel in the

---

[3] Rule 23(e) contemplates that the parties will identify "any agreement made in connection with the proposal." Fed. R. Civ. P. 23(e)(3). Class Counsel confirms that no agreements exist other than those outlined herein and reflected in the Settlement Agreement. Joint Decl. ¶ 18.

settlement process. Proposed Class Counsel have likewise diligently pursued the litigation by investigating the factual and legal claims against Panera, drafting a comprehensive Complaint, and working to gather the documents and information necessary to properly evaluate the case and negotiate a robust settlement that provides Settlement Class Members with significant relief.

Proposed Class Counsel readily satisfy Fed. R. Civ. P. 23(g)(1)(B). They identified the potential claims, investigated them, and pursued them at considerable time and expense. Joint Decl. ¶¶ 10, 13-15. Proposed Class Counsel are highly experienced in handling class action litigation, particularly with respect to claims involving data breach and data privacy such as are at issue in this case. *Id.* ¶¶ 4-8. As a result of Proposed Class Counsel's efforts, the proposed Settlement Agreement provides monetary and other benefits to the Settlement Class. *Id.* ¶ 37. As such, Plaintiffs and their counsel adequately represent the Settlement Class.

**B.** **The Settlement Agreement Was Negotiated at Arm's Length**

The Settlement Agreement was fairly and honestly negotiated by months'-long, arm's-length bargaining between experienced counsel. "The fairness of the negotiating process is to be examined in the light of the experience of counsel, the vigor with which the case was prosecuted, and [any] coercion or collusion that may have marred the negotiations themselves." *Ashley v. Reg'l Transp. Dist.*, No. 05-cv-01567, 2008 U.S. Dist. LEXIS 13069 (D. Colo. Feb. 11, 2008) (internal quotation omitted). "When a settlement is reached by experienced counsel after negotiations in an adversarial setting, there is an initial presumption that the settlement is fair and reasonable." *Marcus v. Kansas Dept. of Revenue*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002).

On December 18, 2024, the parties mediated this case before Jill R. Sperber, Esq. Joint Decl. ¶ 14. Prior to the mediation, the parties served and responded to requests for informal discovery to promote an informed mediation. *Id.* ¶ 15. After a full day of hard-fought, arms-length negotiations, and with the assistance of experienced mediator Jill R. Sperber, Esq., the parties agreed in principle to settlement terms. *Id.* ¶ 14. The parties later memorialized the full terms of their settlement in the Settlement Agreement. *Id.* The mediation demonstrates that this proposed resolution was the product of heavily contested and arm's-length negotiations. *Id.*

**C.    The Relief Provided for the Settlement Class is Fair, Reasonable, and Adequate**

**1.    The Value of the Settlement Benefits**

The cash value of the non-reversionary Settlement Fund is $2,500,000, which represents a per class member recovery of $16.96 – greater than many approved data breach and privacy settlements nationwide.[4] This figure, standing alone, supports the value of this Settlement by any objective measure. Further, the benefit conferred on the Settlement Class far exceeds the $2,500,000 cash component provided in the Settlement when considering the value of the Defendant's business practice commitments, which will serve to protect Settlement Class Members' Private Information that is still in its possession. Moreover, the multifaceted forms of relief available here without a trial provides extraordinary value to Settlement Class Members, thereby supporting the Settlement.

**2.    The Costs, Risks, and Delay of Trial and Appeal**

Plaintiffs and Proposed Class Counsel acknowledge the substantial risks and delays that would arise in continued litigation. This case involves a proposed class of approximately 147,321 individuals; the need to establish cognizable harm and causation; a complicated and technical factual overlay; and a motivated, well-represented Defendant. *See Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415-CMA-SKC, 2019 U.S. Dist. LEXIS 215430 (D. Colo. Dec. 16, 2019) ("Data breach cases such as the instant case are particularly risky, expensive, and complex."); *In re Sonic Corp. Customer Data Sec. Breach Litig.*, No. 1:17-md-2807, 2018 U.S. Dist. LEXIS 242036 (N.D. Ohio Apr. 17, 2018) (similar).

Although nearly all class actions involve a high level of risk, expense, and complexity, the peculiar circumstances surrounding the Incident would have made continued litigation lengthy, complex, and difficult, and the rapid evolution of case law in this area of the law makes outcomes uncertain while increasing litigation expense. Given the obstacles and inherent risks Plaintiffs face, including risks relating to class certification, summary judgment, and trial, the substantial benefits the Settlement provides favor preliminary approval of the Settlement. Joint Decl. ¶ 36.

---

[4] *See e.g., In re Target Corp. Customer Data Breach Security Litigation*, MDL No. 2522 (D. Minn.) ($0.10 per class member recovery); *Madkin v. Automation Personnel Services, Inc.*, No. 2:21-cv-1177 (N.D. Ala.) ($4.59 per class member recovery); *Winstead v. ComplyRight, Inc.*, No. 1:18-CV-4990 (N.D. Ill.) ($4.54 per class member recovery); *Bingaman, et al. v. Avem Health Partners Inc.*, Case No. CIV23-130-SLP (W.D. Ok.) ($5.34 per class member recovery); *Kesner, et al. v. UMass Memorial Health Care, Inc.*, No. 2185-cv-01210 (Mass. Supp. Ct.) ($5.74 per class member recovery).

Finally, because Plaintiffs' case remains at the pleadings stage, the parties have not briefed, and the Court has not yet certified, any class treatment of the claims. Courts have reached different decisions as to whether to grant class certification in data breach cases. *Compare In re Hannaford Bros. Co. Customer Data Sec. Breach Litig.*, 293 F.R.D. 21, 35 (D. Me. 2013) (denying certification), *In re TJX Cos. Retail Sec. Breach Litig.*, 246 F.R.D. 389, 401 (D. Mass. 2007) (same), and *McGlenn v. Driveline Retail Merch., Inc.*, No. 18-cv-2097, 2021 U.S. Dist. LEXIS 179775 (C.D. Ill. Jan. 19, 2021) (same), *with Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 U.S. Dist. LEXIS 38574 (M.D. Ala. Mar. 17, 2017) (granting certification), *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128 (D. Md. May 3, 2022) (certifying certain statewide classes; Rule 23(f) appeal granted), and *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 318 (N.D. Cal. 2018) ("While there is no obvious reason to treat certification in a data breach case differently than certification in other types of cases, the dearth of precedent makes continued litigation more risky.").

This Litigation is complex and carries significant risks for the parties as to both legal and factual issues, and litigating to trial would consume great time and expense. In contrast, the Settlement Agreement ensures that the Settlement Class may recover significant, immediate relief, including relief that this Litigation primarily sought to achieve. Importantly, the Settlement Agreement reflects the parties' compromise of their assessments of the worst-case and best-case scenarios, weighing the likelihood of various potential outcomes. As such, the Settlement strikes an appropriate balance between Plaintiffs' "likelihood of success on the merits" and "the amount and form of the relief offered in the settlement." *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981).

### 3.    The Effectiveness of Administration

The parties agreed to retain Kroll, an experienced and competent settlement and claims administrator familiar with handling data breach settlements. The 147,321 Settlement Class Members are specifically identifiable from Panera's records, so Notice of the Settlement and its terms will be individually mailed to each of them. The Notice Program will clearly inform the Settlement Class of their rights to opt-out, to object, or to file a claim, as well as the mechanisms and deadlines for doing so, and will include all the information required by Rule 23. The Claims Administrator will also be

tasked with reviewing and determining the validity of submitted claims and will provide Settlement Class Members with an opportunity to correct any deficient submissions. S.A. ¶ 2.12.2. Settlement Class Members will receive payments for approved claims for cash relief using their preferred method (*i.e.,* check or some form of electronic payment) within sixty days from the Effective Date. *Id.,* ¶ 8.2. This process ensures that all Settlement Class Members have an opportunity to seek relief, will have their claims assessed fairly by a competent administrator, and will receive benefits in a timely manner. This factor supports a finding that the Proposed Settlement is adequate.

### 4. The Experience and Views of Proposed Class Counsel

A court evaluating a proposed settlement "should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation; a presumption of fairness, adequacy and reasonableness may attach to a class settlement reached in arm's length negotiations between experienced, capable counsel after meaningful discovery." *In re BankAmerica Corp. Sec. Litig.,* 210 F.R.D. 694, 700 (E.D. Mo. 2002) (quoting Fed. Judicial Ctr., Manual for Complex Litig. § 30.42 at 240 (3d. ed. 1997)).

Plaintiffs and Proposed Class Counsel strongly believe the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class Members. Proposed Class Counsel have substantial experience serving as lead counsel in numerous complex actions, including other data breach cases. Joint Decl. ¶¶ 4-8; *see also Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.,* 451 F.3d 528, 537 (8th Cir. 2006) ("Judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel."). Based on their experience, Proposed Class Counsel believe the Settlement provides exceptional results for Settlement Class Members while avoiding the uncertainties of continued and protracted litigation. *Id.*

### 5. The Proposed Fees, Expenses, and Service Awards

Pursuant to the Settlement Agreement, Panera takes no position on an application by Proposed Class for Attorneys' Fees not to exceed 33.33% of the cash Settlement Fund, *i.e.,* $833,250, as well as litigation expenses up to $50,000. S.A. ¶ 7.2. Although Proposed Class Counsel have yet to move for fees in this action, an award of one-third of the Settlement Fund is characteristic of other

11

awards in class action suits in this District and the 8th Circuit. *See, e.g., Huyer v. Buckley*, 849 F.3d 395, 389–99 (8th Cir. 2017) (finding the district court did not abuse its discretion in awarding attorneys' fees that were one-third of the total settlement fund); *In re Life Time Fitness, Inc. Telephone Consumer Prot. Act (TCPA) Litig.*, 847 F.3d 619, 622–624 (8th Cir. 2017) (affirming the district court's fee award of 28% of the settlement fund); *In re U.S. Bancorp. Litig.*, 291 F.3d 1035, 1038 (8th Cir. 1002) (finding the district court did not abuse its discretion in award attorneys' fees that were 36% of the total settlement fund); *see also Bishop, et al v. DeLaval Inc.*, Cas No. 5:19-cv-06129-SRB (W.D. Mo. June 7, 2022) at Doc. 268 (approving fee of one-third of the settlement fund) and Doc. 271 (issuing final approval of settlement). Consistent with the Settlement and Rule 23(h), Proposed Class Counsel will separately move for an award of fees and costs prior to the Opt-Out and Objection Deadline, and the Court will have a full opportunity to consider the appropriate fees as part of the final approval process.

Likewise, Proposed Class Counsel will seek reimbursement of expenses from the Settlement Fund, not to exceed $50,000. It is appropriate and customary in class litigation for class counsel to be reimbursed for out-of-pocket litigation expenses, and the Court may make a preliminary finding that such costs are reasonable. *See* 2 Joseph M. McLaughlin, McLaughlin on Class Actions § 6:24 (8th ed. 2011) (noting that "class counsel also is entitled to reimbursement from the class recovery (without interest) for the costs and reasonable out-of-pocket expenses incurred in prosecuting the litigation").

Finally, Panera takes no position on an application by Representative Plaintiffs for service awards not to exceed $2,000 per Representative Plaintiff, as permitted under the Settlement Agreement. S.A. ¶ 7.3. Pending a full motion on the requested Service Award, the Court can conclude this amount is likely reasonable given the work the Class Representative performed in the Litigation, including time-consuming fact gathering and assisting Proposed Class Counsel in negotiating and finalizing the Settlement Agreement.

### D.    The Proposal Treats Settlement Class Members Equitably

Finally, Rule 23(e)(2)(D) requires that this Court confirm that the Settlement treats all members of the Settlement Class equitably relative to each other. The Advisory Committee's Note to Rule 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class

members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e), advisory comm.'s note (2018). Here, the Settlement treats Settlement Class Members equitably, as they are eligible to make claims for the same categories of monetary compensation for their individualized monetary expenses and losses incurred due to the Incident, and all California-resident members of the Settlement Class are likewise eligible to receive an additional Statutory Payment in recognition of their California statutory claims.

## V.    CLASS CERTIFICATION FOR SETTLEMENT PURPOSES IS APPROPRIATE

As part of its review of a proposed class settlement, the Court "should make a preliminary determination that the proposed class satisfies the criteria" of Rule 23. Manual for Complex Litigation (Fourth) § 21.632. In evaluating a settlement, however, the Court does not consider trial manageability. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### A.    The Rule 23(a) Requirements are Satisfied

Before assessing the parties' Settlement, the Court should first confirm that the underlying Settlement Class meets the requirements of Rule 23(a). *See Amchem*, 521 U.S. at 620; Manual for Complex Litigation (Fourth), § 21.632. These requirements are numerosity, commonality, typicality, and adequacy—each of which is satisfied here. Fed. R. Civ. P. 23(a); *Schoenbaum v. E.I. Dupont De Nemours & Co.*, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. 2009).

### 1.    Numerosity

In this Circuit, while there is no specific threshold number that satisfies this requirement, forty class members is generally sufficient. *See Schoenbaum*, 2009 U.S. Dist. LEXIS 114080 (quoting *Lockwood Motors, Inc. v. Gen. Motors Corp.*, 162 F.R.D. 569, 574 (D. Minn. 1995)). Numbering approximately 147,321 individuals, the proposed Settlement Class easily satisfies Rule 23's numerosity requirement. Joinder of so many individuals is clearly impracticable. *See Knowlton v. Anheuser-Busch Companies, LLC*, 2014 U.S. Dist. LEXIS 67507 (E.D. Mo. May 16, 2014) (certifying class of "[s]ome 800 persons" because "[r]equiring each of those individuals to bring his or her own legal action undoubtedly would

be inconvenient and costly to both individuals and the legal system."); *Jones v. NovaStar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D. Mo. 2009) (holding that class of over "one thousand persons" satisfied numerosity requirement); *Bradford v. AGCO Corp.*, 187 F.R.D. 600, 604 (W.D. Mo. 1999) ("This Court finds that a class of twenty to sixty-five members is sufficiently numerous under Rule 23.").

### 2. Commonality

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met where the issues raised have "the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The threshold for commonality is low, requiring only that the issue "linking the class members is substantially related to the resolution of the litigation." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 26557 (D. Minn.) (internal citations and quotations omitted). That is, Plaintiffs' "claims must depend on a common contention . . . [that] is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2551. "[T]he presence of differing legal inquiries and factual discrepancies will not preclude class certification." *Glen v. Fairway Indep. Mortgage Corp.*, 265 F.R.D. 474, 478 (E.D. Mo. 2010).

Plaintiffs assert that common questions include whether Panera failed to implement adequate data security measures; whether Settlement Class Members' Private Information was compromised in the Incident; whether Panera owed a duty to Settlement Class Members; whether Panera breached its duties; whether Panera's conduct was unfair; and whether Panera unreasonably delayed in notifying Plaintiff and Settlement Class Members of the material facts of the Incident. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("[F]or purposes of Rule 23(a)(2) even a single common question will do") (internal quotations omitted). Accordingly, these common issues satisfy the commonality requirement of Rule 23.

### 3. Typicality

"Typicality requires the plaintiff to show 'the claims or defenses of the representative parties are typical of the claims or defenses of the class [.]'" *Claxton v. Kum & Go, L.C.*, 2015 U.S. Dist. LEXIS

75605 (W.D. Mo. 2015) (quoting Fed. R. Civ. P. 23(a)(3)). "The burden of demonstrating typicality is fairly easily met so long as other class members have claims similar to the named plaintiff." *DeBoer v. Mellon Mortg. Co.*, 64 F.3d at 1174 (8th Cir. 1995). Typicality exists when there are "other members of the class who have the same or similar grievances as the plaintiff." *In re Zurn Pex Plumbing*, 2013 U.S. Dist. LEXIS 26557. Class representatives "need not share identical interests with every class member, but only 'common objectives and legal and factual positions.'" *Claxton*, 2015 U.S. Dist. LEXIS 75605 (quoting *In re Uponor*, 716 F.3d at 1064).

Here, the claims of Plaintiffs and the Settlement Class arise from the same event or course of conduct: the Incident. Plaintiffs' claims are typical because they, like all members of the Settlement Class, provided their Private Information to Panera. Panera, as alleged, owed a duty and was contractually obligated to protect and keep that Information secure. Plaintiffs, like all other members of the Settlement Class, aver that they have sustained injury and damages as a result of Panera's alleged uniform breach of its duty and contractual obligations to adequately safeguard that information. Plaintiffs' claims arise out of the same course of conduct, are based on the same legal theories, seek the same types of damages as those of the Settlement Class, and meet all necessary standing requirements; therefore, the typicality requirement of Rule 23(a)(3) is satisfied.

### 4. Adequacy of Representation

Rule 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." The adequacy requirement is met where: "(1) the representatives and their attorneys are able and willing to prosecute the action competently and vigorously; and (2) each representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D. Mo. 2004).

Here, Plaintiffs have no conflicts of interest with other Settlement Class Members, are not subject to unique defenses, and their counsel have vigorously prosecuted and continue to vigorously prosecute the Litigation on behalf of the Class. Plaintiffs are members of the Settlement Class and assert they experienced the same alleged injuries and seek, like other Settlement Class Members, compensation for harm resulting from Panera's data security shortcomings. Further, Proposed Class

Counsel have extensive experience as zealous class action litigators, including in the area of data breach litigation, and are well suited to continue representing the Settlement Class. *See* Joint Decl. ¶¶ 4-8. Proposed Class Counsel are experienced in both prosecuting and trying class actions and have incurred significant costs and risks in this litigation by performing extensive work to identify and investigating potential claims in the Litigation, establishing the factual bases for the claims sufficient to prepare a detailed class action complaint, and evaluating confidential discovery for the purposes of negotiating a fundamentally fair and reasonable settlement.

**B.    The Rule 23(b)(3) Requirements are Satisfied**

In addition to meeting the four requirements of Rule 23(a), parties seeking class certification must demonstrate that the action is maintainable under one of the three subsections of Rule 23(b). Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies Rule 23(b)(3).

**1.    Predominance**

The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. *See* Fed. R. Civ. P. 23(b)(3) and Advisory Committee Note – 1966 Amendment on Rule 23(b)(3). The predominance requirement is satisfied when plaintiff and class members share a common claim that is "capable of class wide resolution," meaning that determination of the claims' "truth or falsity will resolve an issue that is central to [the claims'] validity . . . in one stroke." *Dukes*, 564 U.S. at 350.

The proposed Settlement Class is well-suited for certification under Rule 23(b)(3) because questions common to Settlement Class Members predominate over questions affecting only individual Settlement Class Members. Plaintiffs' claims for negligence, negligence *per se*, invasion of privacy,

breach of implied contract, unjust enrichment, violation of California's Consumer Privacy Act, and declaratory judgment raise common issues capable of class wide resolution, and these issues predominate over any questions that would affect individual Settlement Class Members. Each of these causes of action concerns the same fundamental questions of fact and law regarding Panera's conduct and the Incident, including those questions outlined above.

The resolution of these common issues revolves around common evidence that does not vary among Settlement Class Members, so they can be fairly resolved for all Settlement Class Members at once. Similarly, resolving these questions as to one claim would resolve the other claims as well. *See In re Anthem*, 327 F.R.D. at 314 (the "main issue" of the plaintiffs' contract and negligence claims "boils down to the common factual contention of whether [the defendant's] data security levels were reasonable"). These common questions are "central to the validity of each one of the claims" and may be resolved "in one stroke." *See Dukes*, 564 U.S. at 350. Here, Settlement Class Members were all allegedly harmed by the same conduct, and common factual and legal issues overwhelmingly predominate over individualized concerns.

## 2. Superiority

"[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy . . . ." Charles Wright, Arthur Miller & Mary Kay Kane, 7AA Fed. Prac. & Proc. Civ. § 1779 (3d ed. 2005). A class action represents the only realistic means through which the approximately 147,321 Settlement Class Members may obtain relief due to the amount in dispute for individual Class Members, the complexity of the technical issues involved in the Incident, and the costly expert testimony and document review that this case requires. No single member of the class has an interest in controlling the prosecution of this action because Plaintiffs' claims and those of Settlement Class Members concern the same Incident. Alternatives to a class action are either no recourse for over 147,321 individuals, or a multiplicity of suits resulting in an inefficient and possibly disparate administration of justice. There are thousands of class members with

modest individual claims, most of whom likely lack the resources necessary to pursue individual legal redress. The superiority requirement thus is satisfied here.[5]

## VI.    APPOINTMENT OF CLASS COUNSEL AND CLASS REPRESENTATIVES

Under Rule 23(g), "a court that certifies a class must appoint class counsel . . . [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider: (1) the proposed class counsel's work in identifying or investigating potential claims; (2) the proposed class counsel's experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) the proposed class counsel's knowledge of the applicable law; and (4) the proposed class counsel's resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).

As discussed above, Interim Class Counsel have spent a significant amount of time identifying the potential claims in this action and pursuing relevant discovery. They are recognized as experienced in consumer law and class-action litigation, particularly in the context of data breach and data privacy litigation, and have been appointed class counsel in major consumer class action cases. *See* Joint Decl. ¶¶ 4-8.  Further, they have committed their full resources to representing the Settlement Class here, and will continue that commitment in resolving this action and administering the Settlement. *Id.*, ¶ 35. Accordingly, the Court should appoint M. Anderson Berry of Clayeo C. Arnold, A Professional Corporation and Ryan D. Maxey of Maxey Law Firm, P.A. as Class Counsel.

The Court should also appoint Plaintiffs as Settlement Class Representative for the Settlement Class. Plaintiffs have fulfilled their duties in pursuing their claims and those of Settlement Class Members in this action, and have vigorously represented the interests of the Settlement Class. *See* Joint Decl. ¶ 33. Plaintiffs do not have any conflicts of interest with any other members of the Settlement Class and will fairly and adequately represent and protect the interests of the Settlement Class as the Class Representatives. *Id.*, ¶ 34.

---

[5] *See In re Anthem*, 327 F.R.D. at 315-16; *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir. 2013) ("[T]he more claimants there are, the more likely a class action is to yield substantial economies in litigation. It would hardly be an improvement to have in lieu of this single class 17 million suits each seeking damages of $15 to $30. . . . The realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30") (quoting *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004)).

## VII.    THE PROPOSED NOTICE PROGRAM SHOULD BE APPROVED

Rule 23 requires that prior to final approval, the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). For classes certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). To satisfy due process, notice to class members must be the best practicable, and reasonably calculated under all the circumstances to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. Fed. R. Civ. P. 23(c)(2); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

Here, the parties have agreed to a robust Notice Program to be administered by a well-respected third-party Claims Administrator—Kroll—which will use all reasonable efforts to provide direct and individual notice to each potential Settlement Class Member by U.S. mail. *See* Declaration of Frank Ballard of Claims Administrator Kroll Inc. in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Admin Decl."), attached as Exhibit B to the Joint Declaration of M. Anderson Berry and Ryan D. Maxey.  Prior to sending the Short Form Notice, Kroll will check all mailing addresses against the National Change of Address ("NCOA") database maintained by the USPS to ensure all address information is up-to-date and accurately formatted for mailing.[6] *Id.* ¶ 10.

The Claims Administrator will also establish a dedicated Settlement Website that will allow Settlement Class Members to file an online Claim Form. *See* Admin Decl. ¶ 14. In addition, the Settlement Website will include relevant dates, answers to frequently asked questions ("FAQs"), instructions for how Settlement Class Members may opt out (request exclusion) from or object to the Settlement, contact information for the Claims Administrator, and how to obtain other case-related information. *Id.*. The Claims Administrator will also establish a toll-free help line where callers will

---

[6] The NCOA database is maintained by the USPS and consists of approximately 160 million permanent change-of-address (COA) records, including names and addresses of individuals, families, and businesses who have filed a change-of-address with the Postal Service. The address information is maintained on the database for 48 months and reduces undeliverable mail by providing the most current address information, including standardized and delivery-point-coded addresses, for matches made to the NCOA file for individual, family, and business moves.

hear an introductory message, have the option to learn more about the Settlement in the form of recorded answers to FAQs, and request that a Long Form Notice be mailed to them. *Id.* ¶ 15.

Kroll estimates that the total cost of notice and administration will be $173,630.  Admin Decl. ¶ 17. The Notice Program and Claim Form negotiated by the parties are clear, concise, and inform Settlement Class Members of their rights and options under the Settlement, including detailed instructions on how to make a claim, object to the Settlement, or opt out of the Settlement. S.A. Exs. A-C. The Notices and Notice Program set forth in the Settlement satisfy the requirements of due process and Rule 23, and the Court should direct the parties and the Claims Administrator to proceed with providing Notice to Settlement Class Members.

## VIII.    CONCLUSION

The Settlement Agreement proposed is an immediate, substantial, and fair settlement. It achieves the goals of the litigation, benefits the entire Settlement Class, and accounts for the risks and uncertainties of continued, vigorously contested litigation. Plaintiffs therefore respectfully request that the Court grant the Motion and enter the agreed proposed Preliminary Approval Order (Exhibit D to the Settlement Agreement) submitted contemporaneously with this Motion.


Dated: June 12, 2025                         Respectfully submitted,

                                             */s Ryan D. Maxey*
                                             Ryan D. Maxey
                                             **MAXEY LAW FIRM, P.A.**
                                             107 N. 11th St., #402
                                             Tampa, Florida 33602
                                             Tel: (813) 448-1125
                                             Email: ryan@maxeyfirm.com

                                             M. Anderson Berry (pro hac vice)
                                             **CLAYEO C. ARNOLD**
                                             **A PROFESSIONAL CORPORATION**
                                             865 Howe Avenue
                                             Sacramento, CA 95825
                                             Telephone: 916.239.4778
                                             Fax: 916.924.1829
                                             Email: *aberry@justice4you.com*

*Proposed Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on June 12, 2025, I caused to be filed and served a true and correct copy of the foregoing document using the Court's Electronic Case Filing (ECF) system, which will send notification of such filing to all counsel of record registered to receive ECF Notices.

*/s Ryan D. Maxey*